IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KOU LEE, | } | CIVIL ACTION FILE |
|       PLAINTIFF, | } | |
| | } | NO: 1:16-CV-01054-AT- JCF |
| v. | } | |
| | } | |
| EQUIFAX INFORMATION | } | |
| SERVICES, LLC, | } | **FIRST AMENDED AND** |
| | } | **RESTATED COMPLAINT** |
|       DEFENDANT. | } | |
| _____ | } | JURY TRIAL DEMANDED |

## I. PRELIMINARY STATEMENT

1.      Plaintiff Kou Lee ("Mr. Lee") brings this civil action against Equifax Information Services, Inc., a credit reporting agency, for violations of the Fair Credit Reporting Act (hereinafter referred to as "FCRA"), 15 U.S.C. §§ 1681 *et seq*., which violations include, but are not limited to, creating inaccurate credit files, providing inaccurate credit reports, providing credit reports to persons not entitled to receive the reports, failing to provide post reinvestigation reports and failing to conduct reasonable investigations of disputed information in Mr. Lee's credit file.  Under FCRA, Mr. Lee seeks actual, statutory and punitive damages, injunctive relief, costs and attorney's fees.  Mr. Lee brings a supplemental state law claim for violations of the Georgia Fair Business Practices Act (hereinafter

1

the "FBPA"), O.C.G.A. § 10-1-390 *et seq*. against Equifax Information Services, Inc. seeking compensatory, treble and punitive damages together with "equitable injunctive relief."

## II.  JURISDICTION AND VENUE

2.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337, and supplemental jurisdiction exists for the state law claim under 28 U.S.C. §  1367.

3.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

## III. PARTIES

4.     Plaintiff Kou Lee is a natural person and is a resident of Gwinnett County, the State of Georgia and of the United States. At all times pertinent hereto, Plaintiff  was a "consumer" as that term is defined by U.S.C. § 1681a(c).

5.     Equifax Information Services LLC, (hereinafter referred to as "Equifax") is a domestic limited liability company licensed to do and doing business in the State of Georgia.

6.      Equifax is a consumer reporting agency, as defined in § 1681(f) of FCRA, and regularly engages in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing "consumer reports," as defined in § 1681a(d) of FCRA, to third parties.

7.      At all times pertinent hereto, Equifax was a "person" and "consumer reporting agency" as those terms are defined by 15 U.S.C. § 1681a(b) and (f).

## IV.  VENUE

8.      Pursuant to 28 U.S.C. § 1391(b) and (c) and 12 U.S.C. § 2614, venue lies in the Northern District of Georgia as plaintiff's claims arise from acts of the defendant perpetrated therein.

9.       Equifax is subject to the jurisdiction and venue of this Court.

10.     At all times pertinent hereto, the referenced credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

## V. STATEMENT OF FACTS

11.     In March 2014, Mr. Lee became interested in purchasing a home and applied with Supreme Lending to be pre-approved for a mortgage.

12.     In March 2014, as part of the mortgage application process, Supreme Lending requested Mr. Lee's credit report from Credit Technologies, Inc. ("Credit Tech").

13.     Credit Tech is a reseller of credit reporting information and obtained Mr. Lee's credit reports from Equifax, Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union").

14.     Upon receipt of Mr. Lee's Credit Reports from Equifax, Experian and Trans Union, Credit Tech assembled and merged the information in the Reports into a tri-merge[1] consumer credit report, which it then sold to Supreme Lending.

15.     On or about April 1, 2014, Credit Tech forwarded Mr. Lee's Credit Report to Supreme Lending (hereinafter referred to as the "April 2014 Credit Report").

16.     When Mr. Lee reviewed the April 2014 Credit Report, he discovered that Equifax had reported accounts and personal identifiers which were not his but which were, in fact, the accounts and personal identifiers of his sister, Ms. Kaylynn Lee.

---

[1] The term 'tri-merge' means a merged report containing the consumer credit information collected from Transunion, Experian and Equifax.

17.   When Equifax associates information reported by a furnisher with a particular consumer, Equifax does not require an exact match of a consumer's identifying information.

18.   Because Equifax uses criteria to sort credit information regarding consumers which does not require an exact match of the consumer's name, social security number, etc., Equifax "mixed" the credit file of Plaintiff's sister, Ms. Kaylynn Lee ('f/k/a' Kong Lee), with the credit file of Plaintiff Kou Lee which resulted in Plaintiff's credit file containing inaccurate information including defaulted accounts belonging to Kaylynn Lee and personal identifying information belonging to Kaylynn Lee.

19.   Defendant knows its matching procedures utilizing only partial matches of identifying information are over inclusive and routinely cause inaccurate credit reports and mixed files by including the credit data belonging to one person in another person's credit file.

20.   Indeed, mixed files are not a new phenomenon.  Defendants have known about the mixed file problem for at least forty (40) years.  *See Thompson v. San Antonio Retail Merchants Ass'n,* 682 F.2d 509 (5th Cir. 1982).

21.   Mixed files occur despite consumers' unique personal iden-tifying information, such as Social Security numbers because Defendant's

matching logic allows information to be included in a consumer's file even when the Social Security numbers do not match nine out of nine digits.

22.    For example, Equifax's matching logic mixed two consumers' files when only seven out of the nine digits of the two consumers' Social Security numbers matched. *Apodaca v. Discover Fin. Servs.,* 417 F.Supp.2d 1220, 1224 (D.N.M. 2006).

23.    In the 1990's the Attorneys General of a number of states filed a lawsuit against Equifax and Trans Union because of their failure to comply with the FCRA including the mixing of consumers' files.

24.    In 1992, Equifax signed an Agreement of Assurances with the Attorneys General of 18 states, including California wherein Equifax agreed it would maintain reasonable procedures to prevent mixed files by accepting and using a consumer's full identifying information (full first and last name, middle initial, full street address, zip code, year of birth, any generational designation, and social security number) for matching and identification purposes.

25.    In the 1990's the Federal Trade Commission ("FTC") filed a lawsuit against Equifax and Trans Union because of their failure to comply with the FCRA including the mixing of consumers' files.

26.   In 1994, Equifax signed a Consent Order with the FTC. Equifax agreed it would and the FTC ordered that Equifax must follow reasonable procedures to assure the maximum possible accuracy of the information on a consumer's file including, but not limited to, procedures to detect logical errors prior to reporting information on a consumer's file, procedures to prevent mixing as a result of data entry by third parties when the third party requests a consumer's report, and procedures during a reinvestigation specifically designed to resolve consumer disputes related to a mixed file. (Complaint and Decision and Order, issued by the Federal Trade Commission on August 14, 1995 *In the Matter of Equifax Credit Information Services Inc.*, Docket No. C-3611, 120 F.T.C. 577 (1995).

27.   On or about March 18, 2015, Defendant entered into a Settlement Agreement with the New York Attorney General (hereinafter referred to as the  "New York Attorney General Settlement Agreement") regarding Equifax's procedures in addressing consumer disputes, generally, and, in particular, Equifax's procedures in addressing consumer disputes of mixed files.

28.   In the Settlement Agreement, Defendant agreed that "more experienced" personnel would conduct investigations into "mixed file" cases and that such personnel will have the discretion to correct a report where

7

documentation is submitted by the consumer. New York Attorney General Settlement Agreement, Section III, B 7.

29.     Defendant continues to repeatedly mix consumers' files despite the agreements with the FTC and State Attorneys General, and hundreds of lawsuits filed against Defendant by consumers whose files have been mixed.

30.     On, or about, April 3, 2014, Plaintiff notified Equifax by Certified Mail Return Receipt Requested (hereinafter referred to as the "4/3/14 Dispute") that he disputed the accuracy of the information and other personal identifying information contained in the April 2014 Credit Report that Equifax had provided to Credit Tech.

31.     Upon information and belief Equifax, after receiving the 4/3/14 Dispute, communicated with the furnishers of information regarding the disputed information and the substance of Plaintiff's dispute, and requested that the furnishers undertake an investigation of Plaintiff's dispute.

32.     Equifax responded to the 4/3/14 Dispute by forwarding to Plaintiff its reinvestigation results.

33.     On May 2, 2014, Equifax notified Mr. Lee that certain information had been deleted from his credit file, however, other inaccurate information which Mr. Lee had disputed remained in his credit file.

**8**

34.    Equifax did not conduct a reasonable investigation of Mr. Lee's 4/3/14 Dispute, because after giving notice to Mr. Lee of its investigation, Plaintiff's credit file maintained by Equifax contained inaccurate information and Equifax continued to report inaccurate credit information concerning Plaintiff.

35.    On or about September 5, 204, Plaintiff applied for a loan to assist in paying his daughter's college tuition.

36.    On or about September 30, 2014, Plaintiff learned that the College Loan was on hold because Equifax had the wrong Social Security Number associated with his credit file and additionally that Equifax inaccurately reported that he had filed a bankruptcy and listed a substantial number of credit inquiries which were not his.

37.    On or about October 14, 2014, Plaintiff made an online dispute with Equifax regarding the numerous credit inquiries in his credit file.

38.    On or about October 14, 2014, Plaintiff disputed the accuracy of the Social Security Number in his credit file and the alleged bankruptcy filing with Equifax.

39.    On or about October 14, 2014, Plaintiff notified Equifax (hereinafter referred to as the "10/14/14 Dispute") that he disputed the accuracy

of the creditor inquiries contained in his credit file and Plaintiff advised Equifax the creditor inquiries were inquiries from his sister's creditors.

40.     After receiving the 10/14/14 Dispute, Equifax did not undertake a reasonable reinvestigation of Plaintiff's dispute.

41.     The 10/14/14 Dispute  was received by Equifax and Equifax responded to the 10/14/14 Dispute by forwarding to Plaintiff its reinvestigation results which showed that Equifax had not removed entries regarding credit inquiries made by his sister's, Kaylynn Lee ('f/k/a' Kong Lee) creditors.

42.     Equifax did not conduct a reasonable investigation of Mr. Lee's 10/14/14 Dispute because after the investigation and its 10/14/15 dispute reinvestigation report, Mr. Lee's credit file with Equifax continued to contain inaccurate creditor inquiry information, as well as showing his sister's Social Security Number.

43.     On October 14, 2014 and October 15, 2014, Mr. Lee notified Equifax (hereinafter referred to as the  "10/14-15/14 Dispute") that he disputed the accuracy of the bankruptcy information and social security number contained in his credit file and advised Equifax the bankruptcy and social security number were his sister's.

44. After receiving the 10/14/-15/14 Dispute, Equifax did not undertake a reasonable reinvestigation of Plaintiff's Dispute.

45. In response to the 10/14-15/14 Dispute, Equifax responded to the 10/14-15/14 Dispute by forwarding to Plaintiff its reinvestigation results which showed that Equifax had removed the Kaylynn Lee ('f/k/a' Kong Lee) bankruptcy information and the incorrect Social Security Number which had appeared in Plaintiff's credit file.

46. After Equifax conducted its investigation of Plaintiff's 10/14-15/14 Dispute and despite its report to Plaintiff, it continued to maintain inaccurate information in Plaintiff's credit file with respect to Plaintiff's SSN and his sister's bankruptcy and continued to include such inaccurate information in the Plaintiff's credit reports.

47. In November 2014, Mr. Lee once again attempted to seek to purchase a home and applied with Fairway Mortgage to be pre-approved for a mortgage.

48. In November 2014, as part of the mortgage application process, Fairway Mortgage requested Mr. Lee's credit report from CBC Innovus ("CBC").

49.    On or about November 10, 2014, CBC sent Fairway Mortgage a tri-merged Credit Report which contained inaccurate information.

50.    When Mr. Lee reviewed the November 10, 2014 CBC Credit Report, he discovered that the information provided by Equifax contained accounts and personal identifiers which were not his but in fact were the accounts and personal identifiers of his sister, Ms. Kaylynn Lee.

51.    On, or about, December 5, 2014, Mr. Lee notified Equifax (hereinafter referred to as the "12/5/14 Dispute") that he disputed the accuracy of his credit file information sent to Fairway Mortgage and attached his prior disputes and other data he had previously communicated to Equifax within the preceding seven months.

52.    After receiving Mr. Lee's 12/5/14 Dispute, Equifax did not undertake a reasonable reinvestigation of the Dispute.

53.    The 12/5/14 Dispute was received by Equifax and Equifax responded to said Dispute by forwarding to Plaintiff its reinvestigation results which showed that Equifax had not removed his sister's, Kaylynn Lee ('f/k/a' Kong Lee) creditor inquires.

54.    Equifax advised Plaintiff, in its Dispute reinvestigation report, that it considered the disputed creditor inquiries to be a 'factual record' and that

Plaintiff should contact the creditors when in fact the creditor inquiries were not made by Mr. Lee's creditors and had been improperly placed in Mr. Lee's credit file by Equifax.

55.   After receipt of Mr. Lee's 12/5/15 Dispute and after its 12/5/14 dispute reinvestigation, Equifax continued to maintain inaccurate creditor inquiry information in Mr. Lee's credit file and continued to make credit reports containing such inaccurate information.

56.   Equifax used over inclusive matching criteria when determining what information was placed in Plaintiff's credit file and the consumer reports it made to third parties. The over inclusive matching criteria created a mixed-file and caused inaccurate reporting and publishing of Plaintiff's credit information.

57.   Equifax has reported derogatory and inaccurate statements and information relating to Plaintiff and Plaintiff's credit history to third parties (hereafter the "inaccurate information"), including the Resellers Credit Tech and CBC.

58.   The inaccurate information includes, but is not limited to, derogatory trade lines that are not Plaintiff's personal identifiers which indicate the use of multiple social security numbers and birth dates by Plaintiff,

inaccurate prior employment data, inaccurate credit inquiries and inaccurate previous addresses.

59.    Equifax has also been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that it has disseminated to various persons, resellers and credit grantors, both known and unknown from at least March 31, 2014 through the present.

60.    Despite the multiple occasions on which Mr. Lee disputed the accuracy of the information in his credit files and in his credit reports and provided the accompanying dispute information, Equifax continued to report inaccurate information.

61.    Despite Plaintiff's exhaustive efforts, Equifax did nonetheless deliberately, willfully, intentionally, recklessly and negligently repeatedly fail to follow procedures that would have corrected the inaccurate information and permanently unmix Plaintiff's credit files from that of Kaylynn Lee ('fka' Kong Lee).

62.    Plaintiff's credit reports have been obtained from Equifax by third parties from at least April 1, 2014 through the present.

63.    On, or about, April 1, 2014 reseller Credit Technologies Inc. ("Credit Tech") requested and obtained consumer credit information about the Plaintiff from Equifax (hereinafter referred to as the "Equifax 4/1/14 report"), which Credit Tech then sold to Supreme Lending on, or about, the same date.

64.    The Equifax 4/1/14 report contained inaccurate information which included, but is not limited to, accounts not belonging to Plaintiff such as Capital One Auto open 3/08/acct #...1001, Capital One open 10/06 acct #9900…, Bank America 12/08 acct #...6687 and inaccurate personal information.

65.    On or about November 10, 2014 and March 10, 2015, CBCInnovis, Inc. ("CBC") requested and obtained consumer credit information about Mr. Lee from Equifax (respectively the "Equifax 11/10/14 report" and "Equifax 3/10/15 report"), which CBC then sold to Fairway Mortgage.

66.    The Equifax 11/10/14 report contained inaccurate information which included, but is not limited to, accounts not belonging to Plaintiff such as USD/GLELSI open 1/11 acct #...8581, Capital One Auto open 3/08/acct #...1001, Midland open 9/12 acct #...8893, Portfolio open 12/11 acct #...2160, Emerald Mgnt open 2/13 acct #...4242, Kohl's/CapOne open 5/09 acct #...4021, Portfolio open 3/13 acct#...6058, CreditOne open 1/14 acct #...4491,

MacysDSNB open 5/09 acct#...8365, Syncb/Belk open10/07 acct#...0669, Syncb/JCP open 8/07 acct #…0385 and inaccurate personal information.

67.    The Equifax 3/10/15 report contained inaccurate information which included, but is not limited to, accounts not belonging to Plaintiff such as USD/GLELSI open 1/11 acct #...8581, Capital One Auto open 3/08/acct #...1001, Midland open 9/12 acct #...8893, Portfolio open 12/11 acct #...2160, Emerald Mgnt open 2/13 acct #...4242, Kohl's/CapOne open 5/09 acct #...4021, Portfolio open 3/13 acct#...6058, CreditOne open 1/14 acct #...4491, MacysDSNB open 5/09 acct#...8365, Syncb/Belk open10/07 acct#...0669, Sync/JCP open 8/07 acct #…0385 and inaccurate personal information.

68.    On November 11, 2014, Kroll Factual Data, Inc. ("Kroll") requested and obtained consumer credit information about the Plaintiff from Equifax (the "Equifax 11/11/14 report"), which Kroll then sold to Fairway Mortgage on or about, the same date.

69.    The Equifax 11/11/14 report contained inaccurate information which included, but is not limited to, accounts not belonging to Plaintiff such as USD/GLELSI open 1/11 acct #...9479, Capital One Auto open 3/08/acct #...0021, Midland open 9/12 acct #...5335, Portfolio/GECC open 12/11 acct #...4919, Emerald Mgnt open 2/13 acct #...164, Kohl's/CapOne open 5/09 acct

#...4021, Portfolio/GECC open 3/13 acct #...1583, CreditOne open 1/14 acct #...4491, MacysDSNB open 5/09 acct#...8365, Syncb/Belk open10/07 acct#...8315, Syncb/JCP open 8/07 acct #...8924 and inaccurate personal information.

70. Equifax was aware of the obligations which FCRA imposed upon it and the conduct aforementioned including the use of overinclusive matching criteria was the intended result of Equifax's standard operating procedure.

71. During the prior two years Mr. Lee's credit reports and credit file have been obtained from Equifax and have been reviewed by prospective and existing credit grantors and extenders of credit, and the inaccurate information therein has been a substantial factor in precluding Mr. Lee from receiving credit offers and opportunities, known and unknown, inclusive of a student loan and a mortgage.

72. By its actions described herein, Equifax willfully and negligently failed to comply with the requirements of FCRA.

73. At all times pertinent hereto, Equifax was acting by and through its agents, servants and/or employees who were acting within the course

and scope of their agency or employment, and under the direct supervision and control of Equifax.

74. At all times pertinent hereto, the conduct of Equifax, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

75. The information that did not pertain to Plaintiff, and which was contained within an Equifax consumer credit report and/or Equifax consumer credit information, was inaccurate.

76. Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

77. Equifax has repeatedly violated § 1681e(b) in the past and has failed to correct its procedures.

78. The inaccurate information has been a substantial factor in precluding Plaintiff from obtaining credit.

79. Plaintiff has complied with all conditions precedent to bringing this action.

## VI. CAUSES OF ACTION

### COUNT ONE

*Violation of 15 U.S.C. § 1681e(b)*

*Failure to assure maximum possible accuracy.*

80. Plaintiff repeats, realleges and incorporates by reference the foregoing paragraphs.

81. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintained concerning Plaintiff.

82. As a result of the above-described actions or inactions of Defendant Equifax, Plaintiff has sustained damages and continues to sustain damages consisting of lost credit opportunities, harm to credit reputation and credit score, and emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

83. Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Equifax is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. §§ 1681e(b).

84. The conduct of Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages and harm to Plaintiff that is set forth herein and, as a result, Equifax is liable to

Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorneys' fees and the costs of litigation, as well as such further relief, as may be permitted by law.

## COUNT TWO

*Violation of 15 U.S.C. § 1681i*

*Failure to reinvestigate.*

85.    Plaintiff repeats, realleges and incorporates by reference the foregoing paragraphs.

85.    Equifax violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in Plaintiff's credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to furnishers of the information; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

86.    Equifax failed to review and consider all relevant information submitted by Plaintiff in violation of 15 U.S.C. § 1681i.

87.    As a result of the above-described violations Plaintiff has sustained damages and continues to sustain damages consisting of lost credit opportunities, harm to credit reputation and credit score, and emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

88.    Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Equifax is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency of information pursuant to 15 U.S.C. §§ 1681i. Plaintiff seeks damages in an amount to be determined by the jury and Plaintiff requests attorney fees and cost.

### COUNT THREE

*Violation of 15 U.S.C. § 1681i(f)(3)(A)*

*Failure to provide the required post reinvestigation notices to a reseller.*

89.    Plaintiff repeats, realleges and incorporates by reference the foregoing paragraphs.

90.    On or about June 3, 2015, Plaintiff contacted CBC by telephone and Plaintiff and a CBC representative reviewed the CBC credit file data consisting of the trade lines and personal identification data previously provided by Equifax to CBC.

91.    On or about June 5, 2015 Plaintiff received the CBC reinvestigation report dated June 4, 2015 which reflected the changes and corrections conveyed by Plaintiff to the CBC representative during the aforementioned June 3, 2015 phone call.

92.    Thereafter Plaintiff did not receive from Equifax the post reinvestigation notices required by 15 U.S.C. §§ 1681i(f)(6), (7) and which constitute a part of the aforementioned June 3 dispute and subsequent reinvestigation process.

93.     Plaintiff was not informed by Equifax of his right to request a description of the procedure employed by Equifax, and the right to add a statement to his consumer file, pursuant to the aforementioned June 3 dispute and the Equifax reinvestigation resulting therefrom.

94.     Upon information and belief Plaintiff believes Equifax failed to prepare and provide the aforementioned §§ 1681i(f)(6), (7) reinvestigation results and required notices.

95.     Pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, Equifax is liable to the Plaintiff for willfully and negligently failing to comply with the requirements imposed on a consumer reporting agency pursuant to 15 U.S.C. §§ 1681i(f)(2), (3). Plaintiff seeks damages in an amount to be determined by the jury and Plaintiff requests attorney fees and cost.

96.     As a result of the above-described violations Plaintiff has sustained damages and continues to sustain damages consisting of lost credit opportunities, harm to credit reputation and credit score, and emotional distress in the form of mental pain, anguish, humiliation, embarrassment, anxiety and frustration. Plaintiff will continue to suffer the same for an indefinite time in the future, all to Plaintiff's great detriment and loss.

**COUNT FOUR**

*Violation of 15 U.S.C. § 1681b(a)*

*Disseminating Plaintiff's credit information to third parties who did*
*not intend to use the information in a credit transaction with Plaintiff*

97.     Plaintiff repeats, realleges and incorporates by reference the foregoing paragraphs.

98.    The FCRA provides that Equifax may only furnish a credit report to a person "which it has reason to believe ... intends to use the information in connection with a credit transaction involving the consumer on whom the information is furnished." 15 U.S.C. § 1681b(a).

99.    Defendant violated 15 U.S.C. § 1681b(a) by furnishing his credit report to third parties who Defendant knew, or should have known, did not intend to use the credit report in connection with a credit transaction involving Mr. Lee.

## COUNT FIVE

*Violation of O.C.G.A. § 10-1-390 et seq.*

*Georgia Fair Business Practice Act*

100.    Plaintiff repeats, realleges and incorporates by reference the foregoing paragraphs.

101.    Equifax's actions in violation of FCRA including, but not limited to, the reporting of information it knew, or should have known, to be false constitutes willful and intentional violations of Georgia's Fair Business Practices Act, including but not limited to, the use of unfair or deceptive acts and practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce, in violation of the GFBPA § 10-1-393(a).

102.    The false reporting of a consumers' credit information, including credit history and personal identifiers has a potential adverse effect on the consumer marketplace and the economy in general.

103. Acts that violate the FCRA are by definition "unfair or deceptive acts or practices in commerce" in violation of section 5(a) of the 15 U.S.C. § 45(a), Federal Trade Commission Act ("FTCA").[2]

104. Plaintiff's allegations show acts by Equifax that harm, or could harm, the consumer marketplace.

105. On or about December 31, 2015, Plaintiff notified Equifax of the nature of his claims under Georgia's Fair Business Practices Act but Equifax made no response, written or otherwise, to Plaintiff's notice nor offered any compensation or settlement of Plaintiff's injuries or damages. Plaintiff's notice was given pursuant to O.C.G.A. § 10-1-399.

106. The FBPA is to be construed consistently with the FTCA, as required by O.C.G.A. § 10–1–391(b).[3]

107. As a result of Equifax's actions, Plaintiff is entitled to an award of actual, general, treble and exemplary damages, as well as an award of costs and attorneys' fees.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against Equifax, based on the following requested relief:

---

[2] *See* 15 U.S.C. § 1681s(a).

[3] O.C.G.A. § 10–1–391(b). It is the intent of the General Assembly that this part be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. Section 45(a)(1)), as from time to time amended.

A.     On Count One, against Equifax for compensatory and/or statutory, and punitive damages pursuant to 15 U.S.C. § 1681n and /or § 1681o together with costs and attorneys' fees;

B.     On Count Two, against Equifax for compensatory and/or statutory, and punitive damages pursuant to 15 U.S.C. § 1681n and /or § 1681o together with costs and attorneys' fees;

C.     On Count Three, against Equifax for compensatory and/or statutory, and punitive damages pursuant to 15 U.S.C. § 1681n and /or § 1681o together with costs and attorneys' fees;

D.     On Count Four, against Equifax for compensatory and/or statutory, and punitive damages pursuant to 15 U.S.C. § 1681n and/or § 1681o together with costs and attorneys' fees;

E.     On Count Five, against Equifax for actual, general, treble and exemplary damages, as well as an award of costs and attorneys' fees.;

F.     An order directing that Equifax immediately delete all of the inaccurate information from Plaintiff's credit report and files and cease reporting the inaccurate information to any and all persons and entities to whom they report consumer credit information;

G.     An order directing that Equifax send to all persons and entities to whom they have reported Plaintiffs' inaccurate information within the last two years Plaintiff's updated and corrected credit report information; and

H.     Such other and further relief as may be necessary, just and proper.


This 13<u>th</u> day of May, 2016.


Respectfully Submitted,


<u>S/Dwight Bowen</u>
Dwight Bowen
Georgia Bar Number 071150
Attorney for Plaintiff
235 Peachtree Street, N.E.
Suite 400
Atlanta, Georgia 30303
404-880-3310
Fax 404- 880-3332
dbowen9@aol.com


<u>S/Richard A. Lee</u>
Richard A. Lee
Georgia Bar Number 443925
Attorney for Plaintiff
2385 Wall Street
Conyers, GA 30013
404-288-4444  Fax 404-288-4446
consumerlaw@leelegal.com